IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

In re: BRIAN R. FOSTER, Debtor                                       No. 2:08-bk-75126
                                                                     Chapter 7

R. SHAYNE CONINE                                                     Plaintiff

v.                          No. 2:09-ap-07076
                            No. 2:10-ap-07105

BRIAN R. FOSTER                                                      Defendant

### AMENDED MEMORANDUM OPINION AND ORDER [*]

On May 12, 2009, the plaintiff, R. Shayne Conine [Conine] filed a complaint in her first adversary proceeding against the debtor, Brian R. Foster [Foster], entitled *Complaint to Determine Dischargeability of Debt under 11 U.S.C. § 523 and Objection to Discharge Pursuant to 11 U.S.C. § 727*. On May 28, 2009, Foster, through his attorney of record at that time, N. Donald Jenkins, Jr. [Jenkins], filed his answer to the complaint denying the material allegations contained in the complaint. On July 19, 2010, in her second adversary proceeding against Foster, Conine filed another complaint against Foster entitled *Complaint/Objection to Discharge Pursuant to 11 U.S.C. § 727*. The Court treated the second complaint as an amendment to the original complaint filed in the first adversary proceeding. On August 19, 2010, Foster, through his new attorney of record, Stanley V. Bond, filed his answer to the second complaint, again denying the material allegations of Conine's complaint. At trial, Conine announced she was no longer pursuing the § 523(a)(4) allegations but was pursuing her objections to discharge under § 727(a)(2)(B), (a)(3), and (a)(4)(A).

On March 13, 2012, the Court heard the complaint. At the conclusion of the trial, the Court took the matter under advisement. For the reasons stated below the Court finds in favor of Conine as to her objection to discharge under § 727(a)(4)(A) and denies the

---

[*] Amended by the Court to correct a time period stated in footnote 1.

debtor his discharge under that section. However, the Court holds that Conine failed to carry her burden of proof under 11 U.S.C. § 727 (a)(2)(B) and (a)(3) and denies that portion of Conine's complaint.

## JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. § 1334 and 28 U.S.C. § 157, and it is a core proceeding under 28 U.S.C. § 157(b)(2)(J). The following opinion constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

## GENERAL BACKGROUND

In 2006, Conine filed a complaint in the Circuit Court of Pulaski County, Arkansas, against Foster (case number CV 06-6952). Foster answered the complaint without assistance of counsel, but later hired Jenkins to represent him. According to Foster, he had defenses to the state court action and was entitled to relief on a counterclaim, and he provided this information to Jenkins. Jenkins allegedly mailed an amended answer to the complaint to the court; however, no answer was ever filed. When the date for trial arrived--January 4, 2007--neither Foster nor Jenkins appeared. On January 12, 2007, the state court entered a default judgment in favor of Conine and against Foster; in its order of judgment, the state court found that proper service and notice had been given to Foster and that Foster had breached the parties' lease agreement and his fiduciary duty to Conine. The court awarded damages in the amount of $41,527.18, plus attorney's fees in the amount of $3750.57. This was the precipitating factor in Foster ultimately filing bankruptcy.

Jenkins subsequently filed a Motion to Set Aside the Verdict but was unsuccessful. The state court again found that there was proper notice of the trial date. Foster then hired Robert R. Cortinez II of the Cortinez Law Firm to handle a potential malpractice claim on behalf of Foster against Jenkins for failing to file an answer and otherwise defend the state court action. Cortinez wrote Jenkins on September 16, 2008, advising Jenkins that

2

Cortinez had taken over Foster's state court case. (Pl.'s Ex. 3.) In that letter, Cortinez confirmed that the $42,000.00 judgment was rendered against Foster due to Jenkins's failure to file an answer or other pleading with the state court and the subsequent nonappearance of Jenkins and Foster at trial. Cortinez also sought reimbursement from Jenkins of the $500.00 retainer Foster had paid to Jenkins to handle the state court case. In addition, Cortinez put Jenkins on notice that Jenkins should contact his liability carrier for negotiation "of this matter." Two days later, on September 18, 2008, Cortinez wrote Paul Herrod, Conine's attorney at the time, to advise Herrod that Foster had no choice but to file bankruptcy and that Foster would be listing the contingent malpractice claim against Jenkins in Foster's bankruptcy. (Pl.'s Ex. 4.) On September 23, 2008, Jenkins replied to Cortinez to advise Cortinez that he had no malpractice coverage. (Pl.'s Ex. 7.) He also stated that he had offered to assist Foster, pro bono, in filing bankruptcy and, again, stated that if Foster was not represented, "he is free to contact me at any time to discuss this or any other matter."

Jenkins met with Foster after Jenkins said he was willing to do Foster's bankruptcy for no fee in an effort to resolve the Conine judgment pursuant to a discharge in bankruptcy. Foster agreed to let Jenkins file Foster's chapter 7 petition, which Jenkins did on December 12, 2008. However, the schedules in that filing failed to list the contingent malpractice claim against Jenkins. In addition, Foster failed to list his ownership interest in Real Estate Acquisitions, LLC and his use of a 1997 Mercedes, plus other errors discussed below.[1]

---

[1] For background, the Court notes that Jenkins failed to file timely responses to requests for admissions in this adversary proceeding, the failure of which provided a basis for Conine to have the Court rule that the requests for admissions were admitted. That particular issue was later settled by the parties when Foster obtained new counsel. However, the Court held a hearing on an order for Jenkins to show cause why sanctions should not be issued against Jenkins and ultimately determined that Jenkins had actually fabricated evidence in an attempt to convince the Court that he had, in fact, timely responded to the admissions. In addition to the potential malpractice in the state court action, Jenkins likewise created an additional problem for Foster in the adversary

(continued...)

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

As previously stated, Conine dismissed her cause of action under § 523(a)(4) but pursued her objections to discharge under 11 U.S.C. § 727(a)(2)(B), (a)(3), and (a)(4)(A). The Court finds that Conine failed to carry her burden of proof as to § 727(a)(2)(B) because she presented no proof that Foster, with fraudulent intent, transferred, removed, destroyed, mutilated, or concealed property of the estate *after* the filing of the petition. The Court also finds that she failed to carry her burden of proof as to § 727(a)(3) because she presented no proof that Foster concealed, destroyed, mutilated, falsified, or failed to keep or preserve records from which Foster's financial condition might be ascertained.

However, the Court finds that Conine carried her burden of proof under § 727(a)(4)(A) and Foster failed to present sufficient evidence to explain his conduct. Section 727(a)(4)(A) reads as follows:

> (a) The court shall grant the debtor a discharge, unless--
> . . . .
> > (4) the debtor knowingly and fraudulently, in or in connection with the case--
> > > (A) made a false oath or account;

11 U.S.C. § 727(a)(4). To prevail in a complaint brought pursuant to § 727(a)(4)(A), the plaintiff must establish that "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case." *Jacoway v. Mathis* (*In re Mathis*), 258 B.R. 726, 735 (Bankr. W.D. Ark. 2000). The plaintiff has the burden of proving facts essential to an objection to discharge by a preponderance of the evidence. *See Barclays/Am. Bus. Credit, Inc. v. Adams* (*In re Adams*), 31 F.3d 389, 393-94 (6th Cir. 1994) (analyzing *Grogan v. Garner*,

---

[1] (...continued)
proceeding by not responding timely to the request for admissions. As a result of those matters and others, Jenkins was suspended by the Court from the practice of law in bankruptcy court for a one-year period. Immediately prior to this Court's order suspending Jenkins, the Arkansas Supreme Court Committee on Professional Conduct suspended Jenkins from the practice of law in Arkansas for a period of two years.

498 U.S. 279, 291 (1991)); *see also Ramsay v. Jones* (*In re Jones*), 175 B.R. 994, 997 (Bankr. E.D. Ark. 1994). However, once the plaintiff has introduced evidence that the debtor committed any of the prohibited acts, the debtor has the burden of coming forward with evidence to explain his conduct. *In re Jones*, 175 B.R. at 997 (citing *Jolles v. Freedman* (*In re Freedman*), 693 F.2d 50, 51 (8th Cir. 1982)).

The Bankruptcy Code requires debtors to complete the schedules and statements of affairs under oath. *Cepelak v. Sears* (*In re Sears*), 246 B.R. 341, 347 (B.A.P. 8th Cir. 2000) (referencing 28 U.S.C. § 1746). Statements made with a reckless disregard for the truth are regarded as intentionally false. *Korte v. Internal Revenue Service* (*In re Korte*), 262 B.R. 464, 474 (B.A.P. 8th Cir. 2001) (citations omitted). Omissions from the schedules qualify as a false oath if they are made knowingly and with fraudulent intent. *In re Sears*, 246 B.R. at 347 (citing *Mertz v. Rott*, 955 F2d 596, 598 (8th Cir. 1992)). Because a debtor rarely admits fraudulent intent, the objecting party must rely on a combination of circumstantial evidence that suggests the necessary intent. *In re Jones*, 175 B.R. at 1002 (citing *McCormick v. Security State Bank*, 822 F.2d 806, 808 (8th Cir. 1987)). The debtor cannot then overcome that inference of his intent to deceive with an unsupported assertion of honest intent. *In re Mathis*, 258 B.R. at 733 (quoting *In re Van Horne*, 823 F.2d 1285, 1287 (8th Cir. 1987)).

The Court must determine whether a statement or omission is material. Generally, the statement or omission is material if it "'bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.'" *In re Sears*, 246 B.R. at 347 (quoting *In re Chalik*, 748 F.2d 616, 618 (11th Cir. 1984)). Based on the evidence before it, the Court finds that Foster knowingly failed to list all of his assets--specifically, a malpractice claim, his interest in an LLC, and his control of a vehicle--in his bankruptcy schedules and, thereby, made a false oath with fraudulent intent, in connection with and material to this case.

5

Of the three material omissions the Court has identified, the most significant asset not listed is the malpractice claim Foster had against Jenkins. As reflected in the Cortinez letters (and other evidence referred to later), Foster was well aware at the time of the bankruptcy filing that he had a malpractice claim against Jenkins. Apparently, he subsequently determined the claim would be difficult to collect after Jenkins advised Cortinez that Jenkins had no malpractice coverage. Thereafter, Foster and Jenkins entered into what the Court believes to be a Faustian bargain wherein Jenkins agreed to represent Foster without charge for Foster's bankruptcy filing in an effort to discharge Conine's judgment against Foster, provided Foster agreed not to make a "malpractice claim" against Jenkins or list the contingent claim in the bankruptcy schedules.

Through his meeting of creditors, Foster took the position that there really was no malpractice claim. In Foster's original response to Conine's first adversary proceeding, Foster stated that, "Debtor denies the allegations contained in paragraph forty one (41) of Plaintiff's Complaint and affirmatively states that Plaintiff's Exhibit '#8' was a misunderstanding between the parties and has been resolved." (Pl.'s Ex. 5 ¶ 41.) "Exhibit 8" is the letter Cortinez mailed to Jenkins on September 16, 2008, that addressed specifically the potential malpractice claim and requested that Jenkins contact his insurance carrier. Foster further testified at trial that before the bankruptcy Foster and Jenkins had agreed to let "bygones be bygones" with regard to the malpractice claim. Apparently, that conversation or understanding between Jenkins and Foster, if it ever took place, was after Jenkins mailed the letter to Cortinez notifying Cortinez that he had no malpractice coverage. Foster also testified that he did not know if he really had to list the malpractice claim if it was not collectible or if he did not have the money to pursue the claim.

Despite his many explanations for not listing the claim, Foster was aware of his claim against Jenkins at the time of the bankruptcy filing. In Foster's responses to requests for admissions, which were filed after Jenkins was disqualified as Foster's attorney in the bankruptcy case, Foster admitted the existence of the malpractice claim prior to the filing

6

of the bankruptcy and admitted hiring Cortinez to make the claim against Jenkins. (Pl.'s Ex. 14.) In fact, at trial Foster admitted that he purposely failed to list the Jenkins claim even though he knew he had at least a "shaky claim" against Jenkins. He also admitted that he did not pay Jenkins any money for the bankruptcy because Jenkins had agreed that he was going to handle the case without charge.

Foster has lost any credibility about his previous contention that at the time he filed his bankruptcy petition, he believed the malpractice claim had either been released or forgiven (by the supposed discussion of bygones being bygones) or that there was no basis to list the claim because it was not collectible. On January 4, 2010, Foster filed a complaint pro se seeking compensatory and punitive damages of more than $1,000,000.00 from Jenkins for the alleged malpractice for negligence, gross negligence, fraud, breach of contract, breach of fiduciary duty, and tortuous interference with business, all of which was based on Jenkins's action (or lack of action) prior to the filing of Foster's bankruptcy. (Pl.'s Ex. 9.) Foster's allegation that he previously released Jenkins or otherwise resolved the malpractice claim is not only belied by Foster's subsequent suit against Jenkins and Foster's admission of the malpractice claim in his responses to admissions in this case, but is also contrary to the testimony Foster gave at his Rule 2004 examination on April 24, 2009. At the trial, Conine's attorney and Foster read the following exchanges from pages 47, 48, and 49 of the transcript of the examination into the record:

> Q: Do you think you fairly and accurately listed all of your assets?
> A: I think so.
> . . . .
> Q: Any other contingent claims against anybody?
> A: No, not at all.
> Q: Have you settled any lawsuits, claims within--today is April 24th of 2009. Let's go back five years. Have you settled any lawsuits or claims with anyone, insurance companies, medical problems, bills, *malpractice*, any kind of lawsuit or even claims you made or someone made against you, have you settled--[emphasis added]
> A: As a plaintiff or defendant?

```
Q:    Yes.
A:    I don't think so.
. . . .
Q:    So during the last five years you never made a claim and withdrew it
      against someone?
A:    Like--like on--
Q:    I don't know. That's why I--
A.    Like on a car wreck or something--
Q:    A claim against anyone for any reason whatsoever.
A:    No.
```

Even though Foster stated the claim had been released or forgiven, he admitted the existence of the claim, failed to disclose the alleged "settlement," affirmatively denied the settlement in his Rule 2004 examination, and later sued Jenkins to recover his alleged damages.[2]

The facts relating to the malpractice claim are no different now than when Foster filed his bankruptcy petition. Foster admitted at trial that the date of Jenkins's initial malpractice was January 4, 2007, which was prior to the filing of the bankruptcy. Foster enumerates with some specificity in his malpractice complaint the alleged actions of malpractice by Jenkins, all of which occurred prior to the bankruptcy and were apparently well known to Foster when he filed for bankruptcy protection. Foster's argument that the malpractice claim was not viable at the time he filed his petition is not credible in the light of his subsequent statements and present contention that he has a $1,000,000.00 claim against Jenkins. Foster's false statement to the chapter 7 trustee that there was little or no basis for the claim would have discouraged the trustee from pursuing the claim. It appears that Foster and Jenkins were attempting to cover up and minimize, if not entirely negate, the malpractice claim. Regardless of what Foster professed to believe, he was certainly

---

[2] The Court notes that in Foster's original petition and schedules, Foster listed a claim against Conine's state court attorney in the amount of $10,000.00. However, there is no evidence to reflect this to be a viable claim or that there was any pursuit of the claim by Foster's chapter 7 trustee, who filed a trustee's report of no distribution indicating Foster's case was a no-asset case. Regardless, Foster did not make a claim, or even reference, his potential malpractice action against Jenkins in his original petition and schedules, a claim that he now contends has a value of more than $1,000,000.00.

aware of the claim against Jenkins and should have listed it in his petition and schedules. Foster was willing to cooperate with Jenkins because he wanted to get rid of the Conine debt, which, according to Foster, Jenkins claimed would be dischargeable. Foster and Jenkins each thought they were getting something out of Foster's bankruptcy, and if Foster could get the bankruptcy completed without cost and receive his discharge, he would be in the same position he was in prior to the original state court lawsuit with Conine. Foster's failure to list the malpractice claim was compounded by him being in concert with Jenkins to effectively claim the nonexistence of the claim at the first meeting of creditors and at his Rule 2004 examination.

There are other errors that appear on Foster's schedules that are also collectively material and significant. First, Foster failed to list on his original petition and schedules an LLC in which he has an ownership interest: Real Estate Acquisitions, LLC. He did not amend his schedules to add his interest in the LLC until July 28, 2009, well after the initial adversary proceeding was filed in May 2009 that specifically referred to Foster's failure to list all of his assets. On his amended Schedule B filed July 28, 2009, Foster listed a "1% interest in Real Estate Acquisitions Corporation," with a value of $1000.00.[3] Foster claimed that he was basically in charge of the LLC, even though Foster said he only owned 1% of the LLC. The LLC is a family corporation that Foster said he controlled and from which he received all of its income. There was no other evidence introduced to reflect Foster's percentage of ownership. There was much discussion of the LLC among Foster, Jenkins, and the chapter 7 trustee at the meeting of creditors that reflected that the trustee believed the corporation was worth substantially more than claimed by Foster. It is this very type of inquiry that Foster may have been trying to avoid by not listing the LLC in the first place.

---

[3] On July 23, 2009, Foster amended Schedules B, C, and the Statement of Financial Affairs. On July 28, 2009, he again amended Schedule B and C. Foster later amended Schedule B on October 30, 2009, to reflect a new value of $83.00 for the LLC.

9

Second, Foster failed to list on his original petition and schedules a 1997 Mercedes that was available for his use. Question 14 of the Statement of Financial Affairs requires a debtor to "list all property owned by another person that the debtor holds or controls." Foster's worksheet, which he claims he gave to Jenkins prior to filing, listed the Mercedes as property owned by Jimmy Foster (Foster's father) that Foster holds or controls. (Pl.'s Ex. 15.) However, in Foster's original filed Statement of Financial Affairs, Foster failed to list any such vehicle; nor was it listed elsewhere in that original filing.[4] Foster said he sold the Mercedes to his father in 2006; yet, there was no title introduced or other evidence of the sale.

Third, Foster's original schedules filed on December 12, 2008, reflect a monthly income of $1200.00, but the worksheet Foster said he gave to Jenkins prior to filing shows income of $2400.00. (Pl.'s Ex. 15.) Foster testified that he noticed the income was wrong prior to filing the petition but that Jenkins told him that he had ten days to amend the schedule and correct it. The only amendment made to the Schedule I occurred on October 30, 2009, almost a year later.[5]

Fourth, Foster testified at trial that he did, in fact, omit three or four creditors from his original schedules. There was never any explanation given as to why those creditors were left off. To date, Foster has failed to list those three or four omitted creditors.

Finally, Foster also failed to list his 2008 income accurately in his Statement of Financial Affairs. His Statement of Financial Affairs states that Foster's income for that period

---

[4] Foster added the Mercedes to his Amended Statement of Financial Affairs on October 30, 2009.

[5] Conine's initial adversary proceeding was filed on May 12, 2009, and referred to Foster's failure to list, *inter alia*, Foster's malpractice claim against Jenkins, Foster's interest in the LLC, and Foster's use of the Mercedes. Even though Foster was put on notice by the allegations in the adversary proceeding, Foster did not file any amended schedules until July 23, 2009, more than two months later.

was $14,000.00; Foster stated at trial that figure was probably not correct.

Foster admitted at trial that when he signed the initial petition and schedules, he did not read all of the pages, even though he had an affirmative duty to review the accuracy and completeness of the petition and schedules. He also stated at the meeting of creditors that he had completed the petition and schedules truthfully and completely when, in fact, he had not, even though he had sufficient time to do so prior to the meeting of creditors.[6] Foster was aware there were inaccuracies in his petition and schedules when they were filed; yet, Foster subsequently claimed at the meeting of creditors that the petition and schedules were accurate. In fact, the schedules were not accurate and Foster knew that.[7] If Foster was depending on an amendment being filed within a short period of time after his petition was filed, he never followed up to see if the corrections had been made.

Foster had plenty of time to make the corrections prior to the meeting of creditors but did not do so. By not making the corrections, the Court concludes that Foster had the intent to hide from the trustee the malpractice claim, the LLC, and his use of the Mercedes. Additionally, the Court finds that Foster knowingly and fraudulently made a false oath that related materially to Foster's bankruptcy. Foster's credibility is eroded by his many (mis)statements relating to the potential malpractice claim.[8] Even though it was

---

[6] Foster's initial meeting of creditors was scheduled to be held on January 9, 2009. It was subsequently continued to February, 13; then March 13; then June 10; then July 24; then August 28; then September 25. On September 28, 2009, the chapter 7 trustee filed his Initial Report and requested the Clerk's Office to enter a Notice of Assets.

[7] There is some indication that Foster paid close attention to his original schedules. A cable expense was originally included on Foster's prepared schedules. Foster testified that he specifically remembered telling Jenkins or Jenkins's staff that he did not have a cable bill. That correction was actually made prior to the filing of Foster's original petition and schedules. There was no explanation given why Foster's proper income was not also corrected.

[8] Foster's misstatements extend as well to the Supreme Court Committee on
(continued...)

primarily to Jenkins's benefit that the malpractice claim not exist or otherwise "go away," Foster was complicit in promoting to the trustee (and Foster's creditors) that the claim, if it had even existed at all, somehow had been released.

Based on a review of the entire case, including the demeanor and credibility of Foster, the Court concludes that Foster's failure to list the malpractice claim, the LLC, and his use of the Mercedes, plus his affirmative disavowance of the existence of the malpractice claim, ultimately was done with the requisite fraudulent intent from which the Court must deny Foster's discharge under 11 U.S.C. § 727(a)(4)(A). Foster gave a false oath in relation to those particular omissions in at least one, if not all, of the following: (1) when he signed his petition and schedules; (2) when he attended the meeting of creditors; and (3) during his Rule 2004 examination. Even if Foster did provide an accurate worksheet to Jenkins prior to the bankruptcy, it was still Foster's duty to review the petition and schedules thoroughly to verify the accuracy of the information that was going to be filed with the court. Having discovered the omissions, Foster was responsible for making certain the information was corrected. Because Foster took no such further action, the Court concludes that Foster intended to deceive his creditors and the trustee when he appeared at the meeting of creditors and, under oath, told the trustee that he had listed all his assets and debts and that his petition and schedules were truthful, correct, and complete.

Foster's failure to list his potential malpractice claim against Jenkins is indefensible and material. Foster's failure to list his interest in the LLC or the Mercedes is also material.

---

[8] (...continued)
Professional Conduct. In the first paragraph of his written statement to the committee, Foster states, "At no point has Jenkins represented me for free nor has he offered to nor have I asked." (Pl.'s Ex. 13.) He then referred to having paid Jenkins $500.00 as a retainer in October 2006. However, as it subsequently became clear, the $500.00 was a retainer for representation in the state court lawsuit, *not the bankruptcy*. Unequivocally, as Foster admitted at trial, Jenkins did agree to represent Foster for free in Foster's bankruptcy case.

Although the Court can surmise that Foster did not list those two items because he was uncertain how the trustee would view the items, he still had the duty to list all of his assets. The other errors in the petition that were not fully developed in this opinion are not material if examined separately; however, when added together with the items discussed above, those errors provide further support of Foster's lack of credibility and his apparent cavalier attitude toward the completion of the petition and schedules.

Again, the most egregious false oath was in relation to Foster's initial failure to list the malpractice claim and his "cover up" with Jenkins in an attempt to minimize the claim to the chapter 7 trustee. Undoubtedly, Jenkins has culpability here, but the debtor was complicit in perpetuating the myth of not having a malpractice claim. It is unfortunate that Jenkins caused, to a large degree, the situation that resulted in Foster's underlying problem; regardless, Foster improperly used the bankruptcy code in an effort to eliminate the damage that Jenkins helped create. The Court is of the opinion that Foster did not care how the claim by Conine against Foster was resolved as long as it could be somehow avoided, whether through a discharge in bankruptcy (where Foster had no fee) or by Jenkins paying Foster's malpractice claim so that Foster could then pay Conine.

For the reasons stated above, the Court grants Conine's complaint under 11 U.S.C. § 727(a)(4)(A) and denies Foster the discharge of his debts listed in his bankruptcy petition.

IT IS SO ORDERED.

*Ben Barry*
Ben Barry
United States Bankruptcy Judge
Dated: 04/25/2012

cc: Charles S. Embry
    Stanley V. Bond
    R. Ray Fulmer II
    U.S. Trustee